UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

FILED
JAN - 7 2009
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____ DEPUTY CLERK

| | |
|---|---|
| GERALD T. DROUGHT, Individually, and on behalf of All Others Similarly Situated, Plaintiff, <br><br> v. <br><br> STATE FARM FIRE AND CASUALTY COMPANY, and STATE FARM LLOYDS, INC., Defendant. | § § § § § § § § § § § § No. SA-07-CA-0068 |

## ORDER GRANTING DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT PURSUANT TO RULES 12(b)(1) AND 12(b)(6)

BEFORE THE COURT are Defendant State Farm Lloyds, Inc.'s Motion to Dismiss Plaintiff's Amended Complaint Pursuant to Rules 12(b)(1) and 12(b)(6) (Docket No. 50), filed December 21, 2007, Plaintiff Gerald T. Drought's (Individually and on Behalf of All Others Similarly Situated) Response to Defendant's Combined Motion Dismiss Pursuant to Rules 12(b)(1) and 12(b)(6) (Docket No. 54), filed February 8, 2008, Defendant's Reply in Support of Combined Motion to Dismiss (Docket No. 58), filed February 22, 2008, Defendant's Supplemental Memorandum in Support of Motion to Dismiss (Docket No. 68), filed September 22, 2008, Plaintiff's Response to Defendant's Supplemental Memorandum in Support of Motion to Dismiss (Docket No. 69), filed October 6, 2008, and Defendant's

Supplemental Reply in Support of Motion to Dismiss (Docket No. 72), filed October 20, 2008. The parties appeared before the Court for a hearing on this matter on July 9, 2008. Upon consideration of the parties' briefings, the facts, and the applicable law, the Court is of the opinion that Defendant's Motion to Dismiss Plaintiff's Amended Complaint Pursuant to Rules 12(b)(1) and 12(b)(6) (Docket No. 50) should be GRANTED.

### A. Factual and Procedural Background

State Farm Lloyds ("Defendant") sells homeowner's insurance policies, which cover windstorm and hail damage, throughout the United States. *First Amend. Compl.*, at 2. Gerald Drought ("Plaintiff") purchased a homeowner's policy from Defendant in 1985 and has renewed his policy every year since. *Id.* at 2-3. After hail damaged his roof, Plaintiff filed a claim under his policy in May 2006. *Id.* at 3. Defendant inspected Plaintiff's property and found that Plaintiff's roof had suffered damage, which was covered under Plaintiff's policy, in the amount of $6,688.13. *Id.* Defendant applied a $3,810.00 deductible, withheld $2,081.45 as depreciation, and offered to pay Plaintiff $796.68. *Id.* Defendant claimed that it calculated how much money to pay Plaintiff based on the "actual cash value" of the roof at the time it was damaged. *Def.'s Memo in Support of Mot. to Dismiss*, at 6. Defendant told Plaintiff that it would pay Plaintiff the $2,081.45 withheld as depreciation upon completion of the roof's repair or replacement. *First Amend. Compl.*, at 3. Plaintiff refused Defendant's offer and filed this suit on behalf of himself and five putative classes. *Id.* at 3, 7-9. Three of the putative classes include persons who had property insured within Texas, while the other

two classes include persons who had property insured within the United States. *Id.* at 7-9.

Plaintiff contends that both the original contract between the parties and the contract in place at the time Plaintiff's property suffered from hail damage required that Defendant pay Plaintiff the entire cost to repair or replace the damaged property, up to the policy limit and minus Plaintiff's deductible, and not withhold any amount as depreciation. *Id.* at 3. Plaintiff also claims that if the contract covering his property at the time his roof was damaged indeed allowed Defendant to withhold the depreciation value, Defendant did not give Plaintiff adequate notice of this change to his policy. *Id.* at 4. Specifically, Plaintiff claims that Defendant "attempted to conceal its intent to [illegally withhold depreciation] from its insureds with intentionally obscure language." *Pl.'s Resp.*, at 2.

Plaintiff further contends that Defendant did not give him adequate notice about a change in the deductible calculation in Plaintiff's policy. *First Amend. Compl.*, at 4. Under Plaintiff's original policy, Plaintiff would be required to pay a fixed-dollar deductible of $250.00. *Id.* Under the policy in effect when Plaintiff's roof was damaged, Plaintiff was required to pay a percentage-based deductible of 1% of the coverage amount, or $3,810.00.[1] *Id.*

Finally, Plaintiff claims that Defendant provided no consideration to Plaintiff in return for Defendant's decreased risk under the new policy. Defendant benefitted from a higher

---

[1] In Plaintiff's Response to Defendant's Motion to Dismiss, Plaintiff claims that he had been subject to a $500.00 deductible that Defendant then unilaterally increased to the percentage-based deductible of 1% of the amount of coverage. *Pl.'s Resp.*, at 2.

deductible and the depreciation reduction, but there was no corresponding reduction in the premiums that Plaintiff was required to pay. *Id.*

Defendant filed a Motion to Dismiss Plaintiff's claims pursuant to Federal Rule of Civil Procedure 12(b)(6) on the basis that Plaintiff's claims are barred by Texas contract law and the filed rate and primary jurisdiction doctrines. *Def's Mot. to Dismiss*, at 1-2. Defendant has also moved to dismiss Plaintiff's claims based on Federal Rule of Civil Procedure 12(b)(1), arguing that Plaintiff does not have Article III standing to bring this suit because he has not suffered an "injury in fact." *Id., Def's Mem. In Support of Mot. to Dismiss*, at 2.

### B. Standard of Review

Defendant moves to dismiss Plaintiff's breach of contract claims pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). When motions to dismiss based on Rules 12(b)(1) and 12(b)(6) are filed together, courts should consider the 12(b)(1) jurisdictional attack before addressing the 12(b)(6) attack on the merits. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). Accordingly, the Court will first address Defendant's Motion to Dismiss based on Plaintiff's lack of standing, followed by a discussion of the merits of Plaintiff's claim.

### C. Federal Rule of Civil Procedure 12(b)(1) Standard of Review

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) requires a federal district court to evaluate the existence of subject matter jurisdiction over the action before it. Fed. R. Civ. P. 12(b)(1). A court "properly dismisse[s] a case for lack of subject matter

jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). The burden of proof for a Rule 12(b)(1) motion to dismiss lies with the party asserting jurisdiction. *Hartford Ins. Group v. LouCon Inc.*, 293 F.3d 908, 910 (5th Cir. 2002). Accordingly, the plaintiff constantly bears the burden of proving jurisdiction. *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980).

To determine whether subject matter jurisdiction exists, courts may look to the complaint and the undisputed facts in the record. *Barrera-Montenegro v. United States*, 74 F.3d 657, 659 (5th Cir. 1996). Courts should accept as true all well-pled allegations in the complaint, and view them in the light most favorable to the plaintiff. *Tanglewood E. Homeowners v. Charles-Thomas, Inc.*, 849 F.2d 1568, 1572 (5th Cir. 1988). A court should grant a motion to dismiss only when it appears without a doubt that the plaintiff can prove no set of facts in support of his claims that would entitle him to relief. *See Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Home Builders Ass'n of Miss., Inc.*, 143 F.3d at 1010 (applying standard in context of Rule 12(b)(1)). While enjoying broad discretion in handling Rule 12(b) motions to dismiss, courts should make certain that plaintiffs are not improperly denied the right to have claims adjudicated on the merits. *Mahone v. Addicks Util. Dist.*, 836 F.2d 921, 926 (5th Cir. 1988) (noting that "the standard for dismissing a complaint is very high.").

The Fifth Circuit strictly enforces the standing requirement as an essential element of subject matter jurisdiction. *See Doe v. Tangipahoa Parish Sch. Bd.*, 494 F.3d 494, 498 (5th

Cir. 2007). To satisfy the "case" or "controversy" requirement of Article III, which is the "irreducible constitutional minimum" of standing, a plaintiff must demonstrate that he has suffered an "injury in fact," that the injury is "fairly traceable" to the defendant's actions, and that the injury will likely be redressed by a favorable decision. *Houston Chronicle Publ'g Co. v. City of League City, Tex.*, 488 F.3d 613, 617 (5th Cir. 2007). The Supreme Court has defined "injury in fact" as "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (internal quotations omitted). "Failure to establish any one element deprives the federal courts of jurisdiction to hear the suit." *Rivera v. Wyeth-Ayerst Labs.*, 283 F.3d 315, 319 (5th Cir. 2002). When a plaintiff has not suffered an injury in fact, he lacks standing and the court lacks subject matter jurisdiction. *See LeClerc v. Webb*, 419 F.3d 405, 413 (5th Cir. 2005).

Plaintiff claims his injury consists of Defendant's withholding the depreciation value and applying a percentage-based deductible without adequately notifying Plaintiff of these changes to his policy and without providing any consideration to Plaintiff for the additional benefits Defendant received. As Plaintiff points out, "insurers have a duty to call to the insured's attention any changes in the coverage or conditions of a renewal policy." *Harbor Ins. Co. v. Urban Const. Co.*, 990 F.2d 195, 201 (5th Cir. 1993).

Defendant argues that Plaintiff has not suffered any injury in fact because Defendant gave Plaintiff adequate notice of the changes that it had made to Plaintiff's insurance policy

before Plaintiff opted to renew his policy. *See Def's Mem. in Support of Mot. to Dismiss*, at 19. Defendant also argues that as a matter of law it was not required to provide any additional consideration to Plaintiff even though the terms of Plaintiff's renewal policy were less favorable to Plaintiff than were the terms of Plaintiff's previous policy. The Court first addresses whether Plaintiff received adequate notice that the terms of his renewal policy differed from the terms of his previous policy and then turns to the issue of consideration.

### 1. Adequacy of Notice

Plaintiff does not dispute that he received notice from Defendant, but argues that the notice did not adequately apprise him of the changes to the loss payable and deductible provisions of his policy. *First Amend. Compl.*, at 4. Plaintiff cites a variety of case law from other jurisdictions that requires that notice be boldly worded, capitalized, or written in terms that an insured can comprehend, as insureds are not expected to study indecipherable fine print to determine whether and how their policies have been changed. *Id.*, at 6-7. Similarly, the Texas Insurance Code requires that when an insurer changes a policy via renewal, the insurer must notify the policyholder before the renewal takes effect and the notice "must be written in plain language." Tex. Ins. Code Ann. § 2002.102(a)-(b). The Code states that "a policy or endorsement is written in plain language if it achieves the minimum score established by the commissioner on the Flesch reading ease test or an equivalent test selected by the commissioner." Tex. Ins. Code Ann. Article 5.35(h). As adopted by Texas Department of Insurance ("TDI"), the Flesch test requires that the policy "use words with

common and everyday meanings to facilitate readability . . .; be printed . . . in not less than 10-point type . . .; be appropriately divided and captioned and prescribed in a meaningful sequence; [and that] each section . . . contain underlined, boldfaced or otherwise conspicuous titles or caption[s] . . . indicat[ing] the nature of the subject matter." TDI, Commissioner of Insurance Official Order No. 92-0573, Adoption of the Flesch Reading Ease Test (1992).

Defendant sent Plaintiff a packet of information that about his policy renewal. In the accompanying cover letter, the second paragraph stated that Plaintiff's new policy differed from his then-current policy. *Def's Mot. to Dismiss*, Ex. B. Defendant also included in the packet a separate ten-page "Important Notice About Changes to Your Coverage," with detailed information about changes in his policy. *Id.* The first page of this notice points out specific sections that the policyholder should review, including sections about the actual cash value or depreciation provision and the deductible provision. *Id.* While these actual provisions were written in regular font, the first page alerting Plaintiff of the changes was typed in a boldfaced, slightly larger font than the rest of the words on that page, meeting the TDI's type requirement. *See id.* Additionally, the provision sections were separated and their headings were boldfaced. *See id.* The Court thus concludes that Defendant's notification to Plaintiff met the TDI's readability requirements and that Defendant provided Plaintiff with adequate notice of the policy changes. As such, Plaintiff has not suffered an injury in fact based on inadequate notice of the changes to his insurance policy.

## 2. Sufficiency of Consideration

Plaintiff contends that if the insurance policy in effect at the time he filed his claim indeed allowed Defendant to deduct for depreciation, then the policy was void because Defendant reduced its risk without reducing Plaintiff's premium and "Defendant[] gave no consideration for [its] decreased risk." *First Amend. Compl.*, at 4. Defendant argues that it did not have to provide any additional consideration to Plaintiff when it included depreciation in Plaintiff's renewal policy because the renewal policy was not a contract modification but rather a separate and distinct contract. *Def.'s Mem. in Support of Mot. to Dismiss*, at 9. The Court agrees.

Plaintiff points out that under Texas law, "[t]he general rule, . . . is that 'consideration is necessary for a valid modification of the coverage provisions of an insurance policy, whether the effect of the modification is to extend or limit the risks against which the contract affords protection.'" *RLI Ins. Co. v. Philadelphia Indemnity Ins. Co.*, 421 F.Supp.2d 956, 961 (N.D. Tex. 2006) (quoting *Radoff v. Utica Mut. Ins. Co.*, 510 S.W.2d 151, 154 (Tex. Civ. App. 1974, writ ref'd n.r.e.)). This authority, however, only involves *mid-term* contract modifications. A contract renewal, unlike a midterm modification, initiates a new offer and acceptance cycle. *See Safeway Managing General Agency for the State and County Mut. Fire Ins. Co. v. Cooper*, 952 S.W.2d 861, 867 (Tex. App.—Amarillo 1997, rehearing overruled) (because policy coverage was month-to-month and renewal was required for coverage each month, each monthly policy was a new agreement between insurer and insured and the rule

that modification of an existing contract required new consideration did not apply).

Indeed, under Texas law, the general rule for insurance policy renewals is that a renewal "constitutes a separate and distinct contract for the period of time covered by the renewal." *Zuniga v. Allstate Ins. Co.*, 693 S.W.2d 735, 738 (Tex. App.—San Antonio 1985). Even though the terms of a renewal policy may be different from the terms of an expiring policy, neither party needs to provide additional consideration because delivery of the renewal policy constitutes an offer and the insurance premium payment constitutes acceptance of that offer. *Harrington v. Aetna Cas. & Surety Co.*, 489 S.W.2d 171, 176 (Tex. App.—Waco 1972, writ ref'd, n.r.e.).

In this case, neither party disputes that Plaintiff purchased a year-long policy from Defendant in 1985 and has renewed that policy every subsequent year. *First Amend. Compl.*, at 2-3; *Def.'s Mem. in Support of Mot. to Dismiss*, at 10. Every renewal policy that Defendant sent to Plaintiff was an offer, and every premium that Plaintiff paid to Defendant was a corresponding acceptance of Defendant's offer. As such, Texas law does not require that Defendant should have provided Plaintiff with additional consideration because the terms of the renewal policy differed from the terms of a previous year's policy. Because Defendant did not owe Plaintiff any additional consideration when it offered Plaintiff a renewal contract with different terms from the parties' previous contracts, Plaintiff cannot claim he suffered an injury in fact. Thus the Court finds that Plaintiff lacks standing to bring this claim against Defendant and finds that Plaintiff's claim should be dismissed pursuant to Federal Rule of

Civil Procedure 12(b)(1).

Defendant also argues that the filed rate doctrine and primary jurisdiction doctrine preclude Plaintiff from challenging the premium Defendant charged Plaintiff in return for Plaintiff's renewal policy. *Def.'s Mem. in Support of Mot. to Dismiss*, at 11. As the Court has dismissed Plaintiff's adequacy of consideration claim based on state law, it does not need to fully evaluate whether these doctrines require dismissing the same claim. The Court notes, however, that even if Plaintiff were able to maintain a claim for insufficient consideration under state contract law, the filed rate and primary jurisdiction doctrines could preclude the Court from determining whether the consideration the parties provided to each other was reasonable.

### D. Federal Rule of Civil Procedure 56 Standard of Review

Plaintiff has also pled that the policy in place at the time his roof was damaged did not allow Defendant to deduct the depreciation value from its initial payment to Plaintiff. Defendant has moved to dismiss this claim as a matter of law under Rule 12(b)(6). *Def's Mot. to Dismiss*, at 1-2. The parties have both submitted evidence to the Court outside of the pleadings. Thus the Court treats Defendant's Motion to Dismiss on this issue as a Motion for Summary Judgment.

If a defendant presents evidence in support of a Rule 12(b)(6) motion to dismiss and the court does not exclude this evidence, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable

opportunity to present all material made pertinent to such a motion by Rule 56. Fed. R. Civ. P. 12(d). In the instant case, both parties have submitted evidence pertinent to Defendant's Motion and Plaintiff argues in his Response that a genuine issue of fact exists. Accordingly, the Motion will be treated as one for summary judgment and reviewed pursuant to Rule 56.

Summary judgment shall be rendered when the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party bears the burden of informing the district court of the basis for its belief that there is an absence of a genuine issue for trial, and of identifying those portions of the record that demonstrate such an absence. *Id.* However, all evidence must be viewed in the light most favorable to the party opposing the motion. *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). Once the moving party has made an initial showing, the party opposing the motion must come forward with competent summary judgment evidence that a genuine issue of material fact exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). For a court to conclude that there are no genuine issues of material fact, the court must be satisfied that no reasonable trier of fact could have found for the nonmovant. *Anderson v. Liberty Lobby*, 477 U.S. 242, 250 n.4 (1986). Mere assertions of a factual dispute unsupported by probative evidence will not prevent a summary judgment. *Id.* at 248-50.

In his First Amended Complaint, Plaintiff contends that the policy in place when his

property suffered hail damage did not allow Defendant to withhold any funds based on depreciation to the property. *First Amend. Compl.*, at 1. In his Response to Defendant's Supplemental Briefing, Plaintiff acknowledges that the policy Defendant has proffered as being in effect from February 11, 2006 to February 11, 2007 was indeed in effect "at the time in question" for the purpose of Defendant's Motion to Dismiss, but contends that Defendant could not withhold for depreciation even under the newer policy. *Supp. Resp.*, at 5.[2]

The 2006-2007 policy provides that Defendant "will pay the cost to repair or replace with similar construction"of Plaintiff's property subject to the following conditions:

> (1) until actual repair or replacement is completed, we [Defendant] will only pay the actual cash value at the time of the loss of the damaged part of the property, ... ; [and] (2) when the repair or replacement is actually completed we will pay the covered additional amount you [Plaintiff] actually and necessarily spend to repair or replace the damaged part of the property, or an amount up to the applicable limit of liability ... , whichever is less[.]

*Def.'s Mot. to Dismiss*, Ex. A. Unfortunately, the policy does not define the term "actual cash value." The Court therefore looks to Texas law for guidance.

Under Texas law, a court "must give the policy language its ordinary and generally accepted meaning unless the policy shows that the words used are intended to impart a technical or different meaning." *Am. Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154 (Tex. 2003).

---

[2] While Plaintiff had the opportunity to conduct more discovery to ascertain whether this policy was in effect when he suffered property damage, he elected not to do so as the discovery would "likely involve time consuming computer forensics and document review. [. . . and] it is unlikely that any one deponent would have the information necessary to resolve the issue." *Supp. Resp.*, at 5.

In *Ghoman v. New Hampshire Insurance Co.*, the term "actual cash value" was equated with "fair market value," or "the price a willing purchaser who is under no obligation to buy would pay to a willing owner who is under no obligation to sell." 159 F. Supp. 2d 928, 934 (N.D. Tex. 2001). This "actual cash value" can be quantified in one of three ways: (1) comparable sales; (2) the income capitalization approach; or (3) the cost of repair or replacement *less depreciation*." *Id.* (emphasis added). *Ghoman* thus recognizes that Texas courts use replacement cost minus depreciation to calculate "actual cash value." Other Texas courts have also held that "[i]t is generally accepted that depreciation is a factor to be considered when an insurer elects to pay the 'actual cash value' of the damaged property." *Great Texas County Mut. Ins. Co. v. Lewis*, 979 S.W.2d 72, 74 (Tex. App.—Austin 1998, no pet.). *See also* Black's Law Dictionary 1549 (7th ed. 1999) (defining "actual cash value" as "[r]eplacement cost minus normal depreciation"); *Merriam-Webster Online Dictionary*, *available at* http://www.merriam-webster.com/dictionary/actual%20cash%20value (defining "actual cash value" as "money equal tot he cost of replacing lost, stolen or damaged property after depreciation"). Additionally, TDI defines actual cash value as "the replacement cost with proper deduction for depreciation" when the term is not otherwise defined in the policy. *See* TDI Commissioner's Bulletin No. B-0045-98 (June 12, 1998), *available at* http://www.tdi.state.tx.us/bulletins/1998/b-0045-8.html.

Further, insurance policies that do define the term "actual cash value" also use a similar definition to the third approach in *Ghoman*. *See State Farm Fire & Cas. Co. v. Griffin*, 888

S.W.2d 150, 157 (Tex. App.-Hous. [1 Dist.] 1994) fn. 9 ("Actual cash value" is "the replacement cost of an insured item of property at the time of loss, less the value of physical depreciation as to the item damaged."); *Luke v. American Family Mut. Ins. Co.*, 455 F. Supp. 2d 1010, 1015 (D. Ariz. 2006) (defining actual cash value as "[t]he amount which it would cost to repair or replace covered property with material of like kind and quality, less allowance for physical deterioration and depreciation, including obsolescence.").

Plaintiff points out that unlike Defendant's settlement provision for dwelling losses (Plaintiff's coverage at issue) that provides for actual cash value payment, Defendant's settlement provision for most personal property losses provides that "until repair or replacement is completed, we will pay only the cost to repair less depreciation." *Pl.'s Resp. to Def.'s Mot. to Dismiss*, at 10. This varying loss settlement language is consistent with the TDI's form policies for dwellings and for personal property. *See Def.'s Supp. Mem. in Support of Mot. to Dismiss*, Ex. 4, p. 8.

Plaintiff also argues that "actual cash value" means market value under Texas law. *Pl.'s Supp. Resp.*, at 7. In *U. S. Fire Ins. Co. v. Stricklin*, a Texas appellate court recognized that the term "actual cash value" in an insurance contract "is equivalent to a market value measure of damages." 556 S.W.2d 575, 582 (Tex. Civ. App.—Dallas 1977). However, the terms "market value" and "actual cash value" are not necessarily inconsistent or mutually exclusive. Indeed, *Ghoman* also equates "actual cash value" with "fair market value," and states that it can be determined by "the cost of repair or replacement less depreciation." 159

F. Supp. 2d, at 934.

Plaintiff suggests that market value should be calculated as the damaged property's market value immediately before the loss or damage. It relies on *Stricklin*, which states that "[t]he measure of damages under an insurance contract insuring a dwelling, when the loss is not total, is the difference between the value of the property immediately before and immediately after the loss and damage, but within the amount of the policy." 556 S.W.2d, at 582 (quoting *Aetna Casualty & Surety Co. v. Clark*, 427 S.W.2d 649, 655 (Tex. Civ. App.—Dallas, 1968, no writ); and citing *Calhoun v. U.S. Fire Ins. Co.*, 489 S.W.2d 359, 361 (Tex. Civ. App.–Amarillo, 1972, writ ref'd n. r. e.); *Lerman v. Implement Dealers Mut. Ins. Co.*, 382 S.W.2d 285, 287 (Tex. Civ. App.—Houston, 1964, writ ref'd n. r. e.)). However, each of these cases cited in *Stricklin* are different from the instant case. *Aetna* does not specify that the insurance policy in that case relied on the term "actual cash value" to determine the amount of money the insurer was obligated to pay the insured. 429 S.W.2d, at 655. The *Calhoun* court cited cases about two insurance policies, neither of which employed "actual cash value" to measure damages. *See Implement Dealers Mut. Ins. Co. v. Cox*, 376 S.W.2d 384 (Tex. Civ. App.—Houston, 1964, no writ); *Millers Mut. Fire Ins. Co. v. Eggleston*, 357 S.W.2d 766 (Tex. Civ. App.—Fort Worth, 1962, no writ). Finally, the policy at issue in *Lerman* stated that actual cash value would be "ascertained with proper deduction for depreciation." 382 S.W.2d at 287. Because Texas courts have interpreted that as a matter of law "actual cash value" allows for depreciation, Plaintiff's argument that in this case the

term is ambiguous or does not allow for depreciation must fail.

When interpreting the language of an insurance policy contract, if a term is unambiguous and "has only one reasonable interpretation," the term must be interpreted as a matter of law. *Fiess v. State Farm Lloyds*, 202 S.W.3d 744, 746 (Tex. 2006). If a court finds that the term is ambiguous and has more than one reasonable interpretation, however, it must be interpreted in favor of the insured so long as that interpretation is not unreasonable. *Id*. That the parties offer different contract interpretations does not create an ambiguity. *Am. Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 157 (Tex. 2003). Courts cannot "read an ambiguity into the plain language of an insurance contract in order to construe it against an insurer." *Fidelity & Deposit Co. v. Conner*, 973 F.2d 1236, 1245.

Texas courts have routinely applied the term "actual cash value" without finding that the term is ambiguous. The *Ghoman* court stated that the policy language that included but did not define the term "actual cash value" was nonetheless "clear and unambiguous." 159 F. Supp. 2d at 932. The authority indicating that "actual cash value" includes depreciation, however, make this matter unambiguous and the Court must interpret the term to include depreciation as a matter of law. Defendant calculated "actual cash value" under the third method provided in *Ghoman* and consistently with other case law, insurance policies, and administrative authority. Plaintiff has not shown that there is a genuine fact issue as to whether "actual cash value" should be interpreted without allowing for depreciation. Thus the Court must grant Defendant's Motion for Summary Judgment on this claim.

### E. Additional Claims

Plaintiff also argues that Defendant deceitfully withheld this depreciation from insureds "in the hopes that the insureds will not come back to get their money. Many do not, resulting in a windfall gain to [Defendant]." *Pl.'s Resp. to Mot. to Dismiss*, at 9. Not only does the Court find that Defendant's temporarily withholding depreciation is proper under the policy at issue, the Court also finds that Plaintiff's claim that Defendant was unjustly enriched based on withholding depreciation fails. In support of its assertion, Plaintiff cites a 2002 study by Defendant which showed that in 1998 Defendant retained approximately $135 million from policyholders who did not request the depreciation amounts that Defendant had withheld. *See Pl.'s Resp.*, Ex. A; *Pl.'s Supp. Resp.*, at 2. Defendant produced this internal study, which showed that policyholders not claim the depreciated amount only about five percent of the time. *Def.'s Supp. Mem. in Support of Mot. to Dismiss*, at 6-7. While Plaintiff asserts that the actual dollar amount Defendant retains, and not the small percentage of policyholders who do not collect depreciation, is the relevant issue, Plaintiff has not cited any authority supporting this assertion, nor explained how this conduct is deceitful.

### F. Conclusion

After reviewing the record and the statements made by the parties at the hearing, the Court is of the opinion that Defendant's Motion to Dismiss Plaintiff's Amended Complaint Pursuant to Rules 12(b)(1) and 12(b)(6) (Docket No. 50) should be GRANTED. Plaintiff does not have standing under Federal Rule of Civil Procedure 12(b)(1) as he has not suffered

an injury in fact. Additionally, the policy under which Plaintiff submitted a claim to Defendant allowed Defendant to deduct the depreciation value in Defendant's initial payment to Plaintiff. The Court therefore ORDERS that Defendant's Motion to Dismiss Plaintiff's Amended Complaint (Docket No. 50) is GRANTED.

Signed this 7th day of January, 2009.

                                                                                           ROYAL FURGESON
                                                                                         UNITED STATES DISTRICT JUDGE